676 So.2d 58 (1996)
DAYCO PRODUCTS & Crawford & Company, Appellants,
v.
Billy L. RUE, Appellee.
No. 95-3507.
District Court of Appeal of Florida, First District.
July 9, 1996.
*59 David J. Lonigro of Haas, Arend, Ramey, Worman, Biek, Prospect, Siegel & Diamond, Tampa, for appellant.
Michael Staley, Ocala, for appellee.
KAHN, Judge.
In this workers' compensation case, the Judge of Compensation Claims (JCC) granted relief under the emergency conference provision of the 1994 Workers' Compensation Act, Section 440.25(4)(h), Florida Statutes (Supp.1994). We reverse because the record contains no competent substantial evidence, and the order contains no sufficient findings, to support the statutory predicate of a "bona fide emergency."
Claimant Billy Rue alleges that on July 20, 1994, while in the course of his employment with Dayco Products, he bent over to pick up some material and felt a pop or snap in his back. Claimant continued to work until September 1, 1994 when he saw Dr. Mario Medero who found no objective sign of pathology, but ordered an MRI based upon Mr. Rue's subjective complaints of pain. On October 3, 1994, claimant saw Dr. Wagdi Faris, an orthopedist. This doctor had operated on Mr. Rue in 1987 for a protruding disk at L5-S1. Dr. Faris suspected a herniated disk at L5-S1, but testified on deposition that Mr. Rue's condition could be the result of scar tissue related to a prior back injury. Dr. Faris reviewed the MRI films ordered by Dr. Medero, but found them inconclusive. According to Dr. Faris, a conclusive diagnosis would have to await a myelogram and a post-myelogram CT scan. Dr. Faris stated that these tests could lead to a determination of whether surgery was indicated. A report prepared by Dr. Faris on October 3, 1994 stated, "there is no guarantee that (surgery) will help him."
Dr. Medero testified by deposition that, "theoretically a delay in treatment of this type of lesion could worsen his prognosis and the longer you wait the worse the prognosis could become." Dr. Medero went on, "and the reason I qualify that with could become is because that patient can in fact improve with delay.... So it's not a medical certainty that the patient is going to worsen...." In this particular case, Dr. Medero found no objective changes in claimant's condition, but did note "the patient's complaints of pain have worsened."
On June 8, 1995 claimant, through counsel, served his motion for emergency hearing. In its entirety the motion made the following allegations:
1. Claimant's counsel took the deposition of Dr. Wagdi Faris May 22, 1995, attached as Exhibit "A".
2. Dr. Wagdi Faris has recommended that the Claimant undergo a myelogram and post-myelogram CT Scan to make a conclusive decision about the presence of a disc herniation or not and possible surgery.
3. Conrad Bouchard at Crawford & Company has denied authorization for these tests and possible surgery since October 7, 1994.
4. Dr. Faris has opined that the Claimant has been unable to work since at least September, 1994 until at least such time as Mr. Rue has the tests and/or surgery done.
5. Carrier has denied all requests for Temporary Total Disability.
The JCC convened the emergency hearing on July 25, 1995.
At the hearing, claimant sought temporary total disability benefits and surgery and diagnostic tests by Dr. Faris. The employer/carrier argued from the outset that the JCC should not hear the case because no emergency *60 existed. Mr. Rue testified that neither he nor his wife had any income. He had not looked for work, had not applied for unemployment compensation and had not applied for Social Security disability benefits. Mr. Rue's deposition, submitted into evidence at the hearing, also indicated he had no income in his household. His wife is unable to work because she has also had an injury. Mr. and Mrs. Rue have owned their own home in Ocala for eleven years and have two adult children. He described his physical complaints resulting from the accident as sharp pains in his left buttock, leg and foot, and occasional numbness of his left leg. According to Mr. Rue, no other part of his body is bothering him.
In the order now on review, the JCC found "the suspension of all benefits created a situation in which [claimant's] health, safety and welfare were jeopardized. He has no medical care authorized by the E/C/SA, no wages or benefits coming into the family on a regular basis from any source, and a medical condition which may worsen if no treatment is provided." The JCC awarded temporary total disability benefits from September 1, 1994 through the date of the hearing and also authorized Dr. Faris to provide continuing medical care.
In the extensive revisions to our Workers' Compensation Act, effective January 1, 1994, the Legislature added to the Act's requirements a somewhat detailed pre-petition and post-petition procedure. Now, in the typical workers' compensation matter, an employee may not file a petition requesting benefits unless the employee has exhausted all preclaim procedures for informal dispute resolution. § 440.191(2)(a), Fla. Stat. (Supp.1994). In order to initiate the informal dispute resolution procedures, the employee must request the assistance of the Employee Assistance and Ombudsman Office of the Division of Workers' Compensation. The office then has thirty (30) days to assist the employee in resolving the dispute. § 440.191(2)(d), Fla. Stat. (Supp.1994). If the dispute is not resolved, the employee may file a petition which must on its face specifically identify or itemize the matters set out in section 440.192(2), Fla. Stat. (Supp.1994). If a petition does not meet the specificity requirements of the statute, it must be dismissed by the Office of the Judges of Compensation Claims. The carrier is allowed fourteen (14) days after receipt of a petition for benefits in which to assume its defensive position or pay the requested benefits. § 440.192(8), Fla. Stat. (Supp.1994). After a petition has been filed, the statute requires a mediation conference concerning the petition. This conference, under the statute, must be held within twenty-one (21) days after the petition. § 440.25(1), Fla. Stat. (Supp.1994). If the dispute is not resolved by mediation, the Judge of Compensation Claims is authorized to hold a pretrial hearing, establish a discovery schedule, and ultimately to conduct a final hearing. § 440.25(4)(a),(b), Fla. Stat. (1994).
Apparently, the Florida Legislature recognized that certain workers' compensation matters would not be amenable to the time frames envisioned by the Act. The Act thus allows a limited means by which a claimant may bypass the pre- and post-filing requirements. Section 440.25(4)(h), Florida Statutes (Supp.1994), the section under review today, provides:
Notwithstanding any other provision of this section the Judge of Compensation Claims may require the appearance of the parties and counsel before him without written notice for an emergency conference where there is a bona fide emergency involving the health, safety, or welfare of an employee. An emergency conference under this section may result in the entry of an order or the rendering of an adjudication by the Judge of Compensation Claims.
Section 440.25(4)(h) empowers the JCC to adjudicate an emergency claim "pursuant to an abbreviated conference or hearing and, upon making a finding that a bona fide emergency exists, to enter an order awarding or denying such claim for emergency benefits." Bradley v. Hurricane Restaurant, 652 So.2d 443, 444 (Fla. 1st DCA 1995). The scope of the conference convened pursuant to section 440.25(4)(h) is limited by the emergency situation actually involved. Town of Jupiter v. Andreff, 656 So.2d 1374, 1377 (Fla. 1st DCA *61 1995). When an emergency conference results in the entry of an order awarding benefits, the JCC must include a finding, based on competent substantial evidence that an actual emergency exists and must state sufficient facts to support this finding. Id. The emergency conference is an exception to the procedure otherwise envisioned by the Act. If not limited to cases of genuine exigency, the emergency provision would subsume and obliterate those portions of the Act intended by the Legislature to control generally the presentation of compensation claims.
The JCC failed to make a finding based on competent substantial evidence that an actual emergency exists. Although Mr. Rue presented testimony that neither he nor his wife had any job-related income, he presented no evidence concerning their financial situation, and specifically presented no evidence concerning their needs and expenses. We have noted that the petition for emergency hearing in this case came eleven months after the date of injury, and after several months of medical treatment. Dr. Faris recommended a myelogram and CT scan for diagnostic purposes in order to gauge the necessity of surgery. Dr. Faris could not be certain, however, that surgery would help Mr. Rue. Dr. Medero, who diagnosed a herniated disk based upon subjective complaints, acknowledged that, assuming surgery is needed, a delay would not automatically result in a worsening of Mr. Rue's condition. Therefore, given the necessary limitations upon use of the emergency conference, the JCC erred in finding that an actual emergency existed and in awarding relief.
REVERSED.
DAVIS, J., concurs.
SHIVERS, Senior Judge, dissents with written opinion.
SHIVERS, Senior Judge, dissenting.
I respectfully dissent and would affirm the judge's order finding the circumstances in this case constitute an emergency under section 440.25(4)(h), Florida Statutes. I am convinced that the judge of compensation claims did not abuse his discretion in so finding.